Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000325
27-FEB-2019
07:51 AM

NO. CAAP-15-0000325

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


JIJUN YIN, Plaintiff-Appellant,
v.
P.I. AGUIAR, AS PERSONAL REPRESENTATIVE OF
VIRGINIO C. AGUIAR, JR., DECEASED, KEVIN AGUIAR
and AGEE, INC., Defendants-Appellees


APPEAL FROM THE COURT OF THE THIRD CIRCUIT
(CIVIL NO. 11-1-0331)


SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Fujise and Reifurth, JJ.)

Plaintiff-Appellant Jijun Yin (**Yin**) appeals from a judgment entered in favor of Defendants Virginio Aguiar, Kevin Aguiar, and Agee, Inc. (**Defendants**). In the appeal, Yin challenges an "Order Granting Defendants Virginio Aguiar, Kevin Aguiar and Agee, Inc.'s Motion for Summary Judgment as to All Claims" (**Order Granting Summary Judgment**), entered by the Circuit Court of the Third Circuit (**Circuit Court**)[1] on March 27, 2015, and an "Order Granting in Part and Denying in Part Defendants Virginio Aguiar, Jr., Kevin Aguiar, and Agee, Inc.'s Motion for an Award of Attorneys' Fees and the Taxation of Costs" (**Order Granting Fees and Costs**) entered on June 9, 2015.

---

[1] The Honorable Greg K. Nakamura presided.

On appeal, Yin contends that the Circuit Court erred by (1) holding that Hawaii Revised Statutes (**HRS**) §§ 142-63 (2011) and 142-64 (2011)[2] do not apply to the instant case; (2) holding that "Defendants have met their burden of producing evidence that they are the third party beneficiaries of the provision in the Pasture Lease between Paradise Homes, LLC and [Yin] which provides that: 'Licensee [Plaintiff] is fully responsible for keep-ing [sic] cattle's [sic. 'cattle'] out of there [sic. 'their'] crops.' [the 'Pasture Lease provision']"; (3) disregarding genuine issues of material fact, namely (a) that the Pasture Lease had been amended, and (b) that Defendant-Appellee Kevin Aguiar (**Kevin**) cut the fence surrounding Yin's property; and (4) abusing its discretion in awarding attorneys' fees and costs to Defendants.[3]

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Yin's points of errors as follows, and affirm.

---

[2]  HRS § 142-63 provides:

> **§142-63  Trespass on fenced cultivated land.**  If any cattle, horse, mule, ass, swine, sheep, or goat, trespasses on any <u>properly fenced</u> cultivated ground, the owner thereof shall pay upon proof, the full amount of the damage or loss to the landowners, or to any person in possession of the land, whoever suffers the damage or loss.

(Emphasis added).

HRS § 142-64 provides:

> **§142-64  On unfenced cultivated land.**  If any of the animals mentioned in section 142-63 trespasses on any <u>unfenced</u> cultivated ground, the owner thereof shall pay upon proof, the full amount of the damage or loss to the landowner or to any person in possession of the land, whoever suffers the damage or loss.

(Emphasis added).

[3]  On August 7, 2015, Defendants filed a "Motion to Substitute P. I. Aguiar in Place of Defendant-Appellee Virginio C. Aguiar, Jr." because Virginio passed away.  On August 20, 2015, we granted the Defendants' motion.

**(1)** **HRS §§ 142-63 and 142-64.** This case arises from a dispute between Yin, a grower of sweet potatoes, and the Defendants, who raised cattle on adjacent land in Puaka'a, Hilo, Hawai'i. Both Yin and Defendants leased their land from the same landlord. Yin contends the Defendants' cattle entered his land and damaged his sweet potato crops.

Pursuant to a Pasture Lease entered into between Paradise Homes, LLC, the landowner, and Yin, the Licensee, Yin was "fully responsible [for] keeping cattle's [sic] out of there [sic] crops." (**the Provision**). To that end, Yin acknowledged during his deposition that "the landlord told me there may be cattles [sic], and asked me to build a fence to prevent the cattles [sic]. I said yes."

HRS § 142-61 (2011) provides in relevant part:

> **§142-61 Lawful fence; penalty.** (a) Every fence made of stone, posts and rails, posts and boards, posts and wire, or other suitable materials shall be a lawful fence, <u>provided that</u> it is not less than four feet in height, substantially built, strong and close, existing in good state of repair, and capable of turning either all stock or all stock excepting swine, attempting to pass through the fence.

(Emphasis added).

In his "Memorandum in Opposition to [Defendants'] Motion for Summary Judgment as to All Claims" (**Memo in Opposition**), filed in the Circuit Court, Yin argued, *inter alia*, that "Defendants knew that 'Plaintiff's fence was flimsy and poorly constructed[,]'" and that "[a]s Defendants knew that Mr. Yin's fence was really no fence at all, the provisions of HRS § 142-64 remain in place." Yin also argued that his landlord violated an "explicit public policy established by HRS §§ 142-63 and 142-64," which Yin summarizes as:

> cattle owners know how to control cattle. Sweet potato farmers . . . do not. As a result, the burden is on cattle owners to prevent their cattle from doing damage. When they do not do so, the cattle owners are liable for the damage caused by their cattle. It is sound public policy, instituted for the public good, to hold those who know the most responsible for implementing their knowledge for the public's benefit.

In his Opening Brief, Yin acknowledges that "[i]t is undisputed that Mr. Yin's boundary fence did not satisfy the specifications for a lawful fence found in HRS § 142-61" (emphasis added), and, as noted in the Defendants' Answering Brief, makes new arguments concerning the interpretation, legislative intent, and legislative history of HRS §§ 142-61, 142-63, and 142-64.

"It is axiomatic that where a party fails to raise an argument before the courts below, that argument may be deemed waived for purposes of appeal." Cty. of Hawaii v. UNIDEV, LLC, 129 Hawai'i 378, 387, 301 P.3d 588, 597 (2013) (citing State v. Moses, 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003)). Therefore, absent any ambiguous language, we need only consider the plain meaning and application of HRS §§ 142-61, 142-63, and 142-64 to this appeal.

Based on the plain and unambiguous meaning of these statutes, we agree with Defendants that neither HRS §§ 142-63 nor 142-64 applies to the instant case, because Yin's property was neither "unfenced" nor "properly fenced." Further, as discussed infra, Yin affirmatively accepted the duty to keep the cows off his property. Therefore, the Circuit Court did not err in ruling that HRS §§ 142-63 and 142-64 were not dispositive.

**(2) Third party beneficiaries.** Yin next argues that the Circuit Court erred in ruling that the Defendants met their burden of producing evidence that they are third party beneficiaries of the Provision, because Yin did not intend that the Provision confer a benefit upon the Defendants.

"A third party beneficiary is one for whose benefit a promise is made in a contract but who is not a party to the contract. Ordinarily, third-party beneficiary status is a question of fact[.]" Siopes v. Kaiser Found. Health Plan, Inc., 130 Hawai'i 437, 456, 312 P.3d 869, 888 (2013) (citations and internal quotation marks omitted). In resolving the foregoing factual inquiry, this jurisdiction follows the framework set forth by the Restatement (Second) of Contracts § 302 (1981):

4

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

    (a)    the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

    (b)    the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

See Jou v. Dai-Tokyo Royal State Ins. Co., 116 Hawai'i 159, 168-69, 172 P.3d 471, 480-81 (2007) (citing Hough v. Pac. Ins. Co., Ltd., 83 Hawai'i 457, 468 n.15, 927 P.2d 858, 869 n.15 (1996) (quoting *Restatement (Second) of Contracts* § 302)).

In the instant case, Virginio C. Aguiar, Jr. (**Virginio**) testified as follows at his deposition:

[DEFENSE COUNSEL]  Okay.  Was there any discussion between yourself and [the landlord] about construction of fences by farmers?

[VIRGINIO]  Yes.

[DEFENSE COUNSEL]  What was discussed between the two of you?

[VIRGINIO]  I told her that I did not want any responsibility.  I did not want to construct one inch of fence to keep the cattle out of the farmer's lands.  I didn't want any obligation, any responsibility whatever. That's why I wrote what I did in there.

[DEFENSE COUNSEL]  Okay.  And what was her response to your statement?

[VIRGINIO]  That would be included in the lease. . . .

[DEFENSE COUNSEL]  When you referred to "lease," which lease are you referring to?

[VIRGINIO]  The lease to the farmers.

Moreover, Yin testified in his deposition that he agreed to fence his property to prevent cattle from entering.  The evidence is thus undisputed in this regard.

We agree with the Circuit Court that Defendants met their burden of producing evidence that the purpose of the Provision was to benefit Defendants in that Yin had the duty to fence his property to prevent cattle from entering.  We further

agree with the Circuit Court that Defendants met their burden of producing evidence that it was reasonable for them to rely on the Provision in continuing to maintain cattle on the land, and thus Defendants have met their burden of producing evidence that they were "intended beneficiaries" of the Provision, and Yin did not produce contrary evidence to raise a genuine issue of material fact.

**(3)** **Lease Amendment.** Yin next argues that there were genuine issues of material fact regarding whether the Pasture Lease was amended by an alleged addition of a handwritten page which states, in total: "Remove all cattles [sic] across from my farmland. Do not raise cattles [sic] across from my Farmland." **(Handwritten Amendment)**. Yin appears to argue that this amendment would shift the burden of keeping cattle from entering his land to the Defendants.

Yin did not make any arguments regarding the alleged Handwritten Amendment in either his Memo in Opposition filed in the Circuit Court, the attached Declaration, or at the hearing on the motion for summary judgment. Therefore, these arguments raised for the first time on appeal are waived.

Even if we consider Yin's new arguments about the Handwritten Amendment, he would not prevail on appeal. The Pasture Lease states that it is effective as of August 10, 2009. According to Yin's deposition testimony, the Handwritten Amendment was made in September 2009, following a incident in which Defendants' cattle entered his land.

Hawai'i's Statute of Frauds, HRS § 656-1 (2016), provides, in relevant part:

> §656-1 **Certain contracts, when actionable.** No action shall be brought and maintained in any of the following cases:
>
> . . .
>
> (4)    Upon any contract for the sale of lands, tenements, or hereditaments, or of any interest in or concerning them;
>
> . . .

6

> unless the promise, contract, or agreement, upon which the action is brought, or some memorandum or note thereof, is in writing, and is <u>signed by the party to be charged therewith, or by some person thereunto by the party in writing lawfully authorized.</u>

(Emphasis added.)

The Pasture Lease is a contract for an interest in land. The alleged Handwritten Amendment does not bear the signature of Yin, the Defendants, or anyone else. Furthermore, Yin's argument, which presumes the existence of an underlying agreement between himself and Defendants, runs contrary to the terms of the original Pasture Lease and to other statements in Yin's Opening Brief, namely that the Handwritten Amendment "was memorialized . . . by Ms. Prekaski's[4] agent" and not by Defendants or someone authorized by the Defendants. See Honolulu Rapid Transit Co. v. Paschoal, 51 Haw. 19, 26, 449 P.2d 123, 127 (1968) (stating that "[i]t is a fundamental principle of law that there must be mutual assent or a meeting of the minds on all essential elements or terms in order to form a binding contract" (citations omitted)).

Therefore, Yin's argument on this point lacks merit.

**(4) The cut fence.** Yin next argues that the Circuit Court erred in granting summary judgment because there was a genuine issue of material fact as to whether Kevin cut the fence surrounding Yin's property, constituting "intentional damage[,]" which led to Defendants' cattle "trespassing [on] and damaging his crops."[5]

In his Complaint and Pretrial Statement, Yin stated that he "noticed that some areas of his fence which surrounded his sweet potato farm were deliberately cut so that cattle could

---

[4] Teresa Lyn Prekaski is the managing agent for Paradise Homes, LLC.

[5] During his first deposition, Yin alleged that Kevin cut the fence three times: on February 19, 2011, in March of 2011, and on April 20, 2011. However, Yin stated that he saw Kevin cut his fence on April 20, 2011 in order to drive his cattle <u>out</u> of Yin's property, which they had entered, rather than allow them to trespass upon it. Therefore, it appears that the February and March fence cuttings, which Yin did not witness, are the bases for this point of error.

7

pass through the fence." During his first deposition, Yin testified:

> [DEFENSE COUNSEL] Okay . . . it's your position that Kevin Aguiar cut the fence. Is that correct?
>
> [YIN] Yes.
>
> [DEFENSE COUNSEL] But you have never seen him cut the fence, is that correct?
>
> [YIN] No, I have never seen him do it before. Except the last time. But except one last time, it's April 20th when they had to get the cattle out from my farm[.]
>
> . . . .
>
> [DEFENSE COUNSEL] I just want to make it clear. You have never seen Kevin cut the fence except for April 20th[.] Is that correct?
>
> [YIN] No, I have not seen this with my eyes.

Yin's Opening Brief does not provide or cite to any other support for his contention that Kevin cut his fence, apart from the April 20, 2011 incident (which was to drive his cattle off Yin's property). Therefore, based on the foregoing, we disagree that there was a genuine issue of material fact regarding whether Kevin cut Yin's fence thus allowing the cattle onto Yin's property.

(5) **Attorneys' fees and costs.** Yin next argues the Circuit Court abused its discretion in entering its Order Granting Fees and Costs, because of:

> 1) unaddressed questions of law in the Arbitration Award . . . and his desire to have those questions of law addressed in a trial; 2) the unreasonably low amount offered by Defendants in light of the damages suffered by Plaintiff; and 3) the Plaintiffs [sic] sincere belief that the arbitrator relied on incorrect facts generated by errors in translation during the arbitration.

The Order Granting Fees and Costs does not set forth the Circuit Court's reasons for granting in part and denying in part Defendants' Motion for Attorneys' Fees and Costs. A transcript of the relevant May 28, 2015 hearing is not included in the record on appeal. Yin had the burden of furnishing the court with a sufficient record to positively show the alleged error. See Hawai'i Rules of Appellate Procedure Rule 10(b)(1)

8

("When an appellant desires to raise any point on appeal that requires consideration of the oral proceedings before the court appealed from, the appellant shall file with the appellate clerk, within 10 days after filing the notice of appeal, a request or requests to prepare a reporter's transcript of such parts of the proceedings as the appellant deems necessary that are not already on file in the appeal."); see also Bettencourt v. Bettencourt, 80 Hawai'i 225, 231, 909 P.2d 553, 559 (1995) (holding that, due to Appellant's failure to include a transcript of the proceedings pertaining to the challenged imposition of a sanction in the form of attorneys' fees, "we have no basis upon which to review the family court's imposition of sanctions, which we therefore leave undisturbed.").

Based on the foregoing, we cannot address Yin's final point of error.

Therefore, IT IS HEREBY ORDERED that the "Judgment In Favor of Defendants Virginio Aguiar, Kevin Aguiar and Agee, Inc. and Against Plaintiff Jijun Yin," entered by the Circuit Court of the Third Circuit on July 1, 2015, is affirmed.

DATED: Honolulu, Hawai'i, February 27, 2019.

On the briefs:

Gary C. Zamber,
for Plaintiff-Appellant.

Sidney K. Ayabe,
Gary S. Miyamoto,
for Defendants-Appellees.

Chief Judge

Associate Judge

Associate Judge

9